1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  TED HORNSBY II, | **Case No. 1:14-cv-01236 EPG** |
| 12          Plaintiffs, | |
| | **ORDER DENYING SUMMARY** |
| 13  vs. | **JUDGMENT AS TO DEFENDANTS** |
| | **ENGLAND, MCLEAN, AND CAMPOS** |
| 14 | **BASED ON THE FOURTH** |
| 15  COUNTY OF TULARE, CALIFORNIA, JOSEPH | **AMENDMENT CLAIMS AND** |
| ENGLAND, BRADLEY MCLEAN, JOSEPH | **GRANTING SUMMARY JUDGMENT** |
| 16  CAMPOS, AND BILL WITTMAN IN HIS | **AS TO DEFENDANTS COUNTY OF** |
| CAPACITY AS SHERIFF, COUNTY OF | **TULARE AND BILL WITTMAN IN** |
| 17  TULARE, CALIFORNIA, | **HIS CAPACITY AS SHERIFF,** |
|          Defendants. | **COUNTY OF TULARE ON THE** |
| 18 | **MONELL CLAIM** |
| 19 | |
| | (ECF No. 27) |

20

### I.    INTRODUCTION

21

Defendants County of Tulare, Joseph England, Bradley McLean, Joseph Campos, and Bill

22

Wittman in his capacity as Sheriff ("Defendants"), have moved for summary judgment on all claims

23

and defendants.  (ECF No. 27.)  Plaintiff Ted A. Hornsby II ("Plaintiff") filed an opposition (ECF

24

No. 28) and Defendants filed a reply (ECF No. 31).  The Court heard argument on April 15, 2016

25

(ECF No. 32).  William Romaine appeared telephonically for Plaintiff and Judith Chapman appeared

26

telephonically for Defendants.  At the hearing, Plaintiff represented that he had neglected to file the

27

exhibits he intended to attach to his opposition brief and the Court provided him leave to submit

28

those exhibits after the hearing.  Defendants were also granted leave to file supplemental authorities in support of their motion and were provided an opportunity to respond to Plaintiff's late filed evidence.  (ECF Nos. 33, 35, 38.)  The matter is now before the Court.

For the reasons set forth herein, the Court denies summary judgment regarding Plaintiff's Fourth Amendment claims against Defendants England, McClean, and Campos.  Furthermore, construing the facts in favor of the Plaintiff, Defendants are not entitled to qualified immunity on those claims.  The Court holds, however, that Defendants Wittman and Tulare County are entitled to summary adjudication on Plaintiff's <u>Monell</u> claim.  As a result, the Court grants in part and denies in part Defendants' Motion.[1]

## II.   BACKGROUND

Plaintiff filed the underlying complaint based on 42 U.S.C. § 1983 on August 6, 2014.  (ECF No. 1.)  In it, Plaintiff alleges that his constitutional rights were violated during the search and seizure leading to his arrest that took place the evening of March 8, 2012 at 21205 Avenue 144, in an unicorporated area of the County of Tulare, State of California.

Plaintiff alleges that he was a lawful occupant of that property.  That evening, defendants Joseph England ("England") and Bradley McLean ("McLean"), Tulare County Sheriff Deputies, drove onto the property without a search warrant.  Defendants England and McLean handcuffed Plaintiff, searched his pockets without Plaintiff's consent, and placed Plaintiff in the patrol car.  Defendants then searched Plaintiff's truck.  These searches revealed what Defendants contend were cannabis and methamphetamine.   Defendants England and McLean then contacted Joseph Campos ("Campos"), in his capacity as Sergeant, Tulare County Sheriff's Department, who came to the property.  Defendants arrested Plaintiff and charged him with possession of cannabis and methamphetamine.  They also seized a shotgun and Plaintiff's truck.

---

[1] The Court notes that Defendants previously filed a Motion for Summary Judgment (ECF No. 21), but were later granted additional time to fully complete their briefing.  (ECF No. 26.)  At the time that extension was granted, Defendants represented that they intended the current Motion to supersede the originally-filed motion.  The original motion will thus be denied as moot.

The facts regarding the search are discussed in detail below, but it is worth noting at the outset that the initial search of the premises was requested by Plaintiff's sister, Teddie Mitchell, who called the sheriff's department to report potential criminal activity on the property and to ask the deputies to come search the property.  The transcription of that call provides, in relevant part:

> My name is Teddie Mitchell.  I live at 21205 Avenue 144.  And my brother has taken up residence in the barn and he's got a small party going back out there, and I see cars going in and out back out there, and I've got an alarm on the house, and I've got an ought-six my son left with me, but, you know, he's done drugs in the house.  I don't know if he's cooking stuff or growing—he's had weed growing out there before, and, you know, you guys need to come in here and break this up.

(ECF No. 27-16, at p. 4.)  Defendants thus argue that they had consent and/or probable cause for the search and arrest based on this information, as well as the seizure of drugs and weapon found on the property.

According to Plaintiff's complaint, "[t]he search and seizure as hereinabove alleged was unreasonable and therefore was done in violation and deprived Hornsby of rights secured to him by the Fourth Amendment of the United States Constitution as incorporated by the Amendment XIV of the United States Constitution to secure those rights to Hornsby inviolable by the State of California."  (ECF No. 1, at p. 8.)  Defendants have filed a motion for summary judgment arguing that based on the undisputed facts, the search was lawful.  Alternatively, defendants argue that they were protected by qualified immunity.

Notably, two criminal cases against Plaintiff were filed and ultimately dismissed.  In each criminal proceeding, the state courts suppressed evidence from the May 8, 2012 search.

## III.   PRECLUSIVE EFFECT OF THE STATE'S SUPPRESSION OF EVIDENCE

Before turning to an independent assessment of the merits of the case, this Court must determine if it is bound by the prior state court rulings suppressing the evidence obtained from these searches in the two criminal proceedings against Plaintiff.  It is undisputed that both courts in Plaintiff's criminal proceedings granted motions to suppress the evidence that resulted from the searches that night.  (ECF No. 31-1, MF. 30 at 3-4, and MF. 37 at 5.)  Plaintiff argues that the state

court decisions are binding on this Court as a matter of issue preclusion and establish as a matter of law that the searches violated the Fourth Amendment.

Federal courts follow state law to determine the preclusive effect of a state court judgment. Kremer v. Chem. Const. Corp., 456 U.S. 461, 466, 102 S. Ct. 1883, 1889, 72 L. Ed. 2d 262 (1982) ("Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged").  The California Supreme Court describes the contours of issue preclusion, also known as collateral estoppel, as follows:

> Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.  Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  The party asserting collateral estoppel bears the burden of establishing these requirements.

Lucido v. Superior Court, 51 Cal. 3d 335, 341 (1990) (internal citations omitted).

## A.  Analysis of Privity

It is undisputed that the Defendants in this case were not parties to the criminal proceeding. They did not testify at that hearing and did not join in any of the papers filed by the government. Thus, the decision cannot have preclusive effect against them (assuming the other criteria are met) unless defendants are considered in privity with the state prosecutors.

According to the California Supreme Court, "[a]s applied to questions of preclusion, privity requires the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit.  A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's 'virtual representative' in the first action." DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 826 (2015), reh'g denied (Aug. 12, 2015) (internal citations omitted).

As an initial matter, neither party presents a case that squarely addresses the preclusive effect of a suppression order on a subsequent civil case against the officer.  Instead, the parties largely base their arguments on the equities involved.  Plaintiff argues that application of the state court decision would preserve the integrity of the judicial process, promote judicial economy, and preclude re-litigation.  Defendants argue, in contrast, that issue preclusion would be inequitable because suppression motions are brought by prosecutors, who do not face any personal liability, in expedited proceedings.  Civil cases against officers, in contrast, involve personal liability for the officers and have substantially more extensive procedures to protect the officers' rights.  Defendants contend that holding an officer individually liable without an opportunity to be heard whenever a suppression motion is granted would destabilize law enforcement and unfairly expose officers to liability without due process.

The Court has independently found cases squarely addressing the point, although none are binding authority.  For example, the issue was addressed in the case of Sanders v. City of Bakersfield, No. CIV-F04-5541 AWI TAG, 2005 WL 6267361, at *2 (E.D. Cal. Sept. 30, 2005), on reconsideration in part, No. CIV-F-04-5541 AWI TAG, 2009 WL 734059 (E.D. Cal. March 7, 2009).  In that case, like in this one, plaintiffs sued officer defendants for, among other things, violating Plaintiff's Fourth Amendment rights by conducting a warrantless search of plaintiff's home without consent or exigent circumstances.  In the civil case, the plaintiff filed a motion for summary judgment and argued that the defendant officers were precluded from claiming that the search of Plaintiff's home was lawful due to the state court's decision granting the motion to suppress evidence from the search.  Id. at *10.  While noting in frustration that, "[t]he case law suggests the jurisprudence on privity lacks theoretical coherence," the Sanders court ultimately held that privity did not exist between the officers and the state prosecutors for purposes of issue preclusion:

> [T]he court finds that the Police Defendants do not share a sufficient community of interest with the criminal prosecution. . . . While police do aspire to enforce the law, individual officers can not be said to have a personal stake in ensuring conviction. . . . The Defendants' financial interests were not represented in the criminal prosecution the same way the welfare department or state personnel board were. . . . [C]ases suggest that all governmental

entities are in privity with the state's criminal prosecution as they share the duty of providing rules, public order, and justice. However, as individual Police Defendants cannot be characterized as governmental bodies, there is no reason to apply privity on this basis.

Id., at *12-13. The Court went on to review other courts' holdings on this issue:

Though there is no Ninth Circuit precedent that is binding, that court has not been completely silent on the issue. In an older Section 1983 suit against police officers, the Ninth Circuit determined that a plaintiff was not allowed to assert issue preclusion on the issues of consent to entry and probable cause to search though these issues had been adjudicated in favor of plaintiff when his criminal conviction was overturned on appeal: "The defendants were city police officers not directly employed by the state; they had no measure of control whatsoever over the criminal proceeding and no direct individual personal interest in its outcome. In these circumstances there was no privity sufficient to invoke the doctrine of collateral estoppel." *Davis v. Eide,* 439 F.2d 1077, 1078 (9th Cir.1971). The case pre-dated the U.S. Supreme Court's declaration in *Migra* that federal courts must look to state law to determine preclusive effect. *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). With *Eide,* it is unclear whether the ruling was based on federal or California standards of issue preclusion. Nevertheless, the reasoning of *Eide* 's holding is in accord with California privity standards. Having independently reviewed the logic behind *Eide,* this court concludes that it remains good law.

While the issue of privity must be determined with reference to California law, when dealing with issue preclusion, "it is often appropriate to look to the law as it is generally applied in other jurisdictions for additional guidance [unless] ... the state-law question is not a particularly difficult one." *Haring v. Prosise,* 462 U.S. 306, 314, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). California law on privity is anything but clear cut. In looking at issue preclusion in other states, the majority of federal courts have come to the conclusion that privity does not exist between law enforcement officers and the criminal prosecution. See, e.g., *Kinslow v. Ratzlaff,* 158 F.3d 1104, 1106 (10th Cir. 1998) (applying Oklahoma law); *Tierney v. Davidson,* 133 F.3d 189, 195 (2d Cir. 1998) (applying Vermont law); *Kraushaar v. Flanigan,* 45 F.3d 1040, 1050–51 (7th Cir. 1995) (applying Illinois law); *Smith v. Holtz,* 30 F.Supp.2d 468, 477 (M.D.Pa. 1998) (applying Pennsylvania law). The Eighth Circuit, in a case applying North Dakota law, has found privity to exist between police officers and the criminal prosecution. *Patzner v. Burkett,* 779 F.2d 1363, 1369 (8th Cir. 1985) ("the deputies in this case can be properly considered in privity with the state in the prior adjudication and thus bound by the state court's determination that the arrest was illegal"). However, the Eighth Circuit's decisions dealing with other states' laws have followed the majority view. See *Turpin v. County of Rock,* 262 F.3d 779, 782–83 (8th Cir. 2001) (applying Nebraska law, "Collateral estoppel cannot be used against the officers in our case, as the officers were neither parties nor in privity with the State in the criminal action and did not have a full and fair opportunity to litigate the issues in the criminal action."); *Duncan v. Clements,* 744 F.2d 48, 51 (8th Cir. 1984) (applying Missouri law, "collateral estoppel is not appropriate in this case because [police officer], the party against whom collateral estoppel is

6

asserted, was neither a party nor in privity with a party to the prior state criminal proceeding").

Id., at *13-14.

Other courts in this jurisdiction have similarly held that there is no privity between state prosecutors and individual officers in the same context.  Adams v. Nocon, No. CIV. S–07–02083 FCD EFB, 2009 WL 799278, at *4 (E.D. Cal. March 23, 2009) ("the individual deputies were not parties to the criminal case and were not represented by counsel.  In fact, two of the deputies, Deputies Davis and Seto, did not even testify at the criminal proceeding, and Deputies Bruegel and Nocon only participated as witnesses.  For these reasons, the court cannot find that the deputies were 'in privity with a party at the first proceeding'; nor can the court find that the deputies had a 'full and fair opportunity' to litigate the issue in the first proceeding") (internal citations omitted); Saunders v. Knight, No. CV F 04–5924 LJO WMW, 2007 WL 3482047, at *8–9 (E.D. Cal. Nov. 13, 2007) ("Defendants exercised no measure of control over the criminal action and lacked a personal interest in it. Defendants did not appear as parties or witnesses in the criminal action. The criminal action's preliminary hearing rulings are not entitled to preclusive effect here."); Willis v. Mullins, No. CIV F 04-6542 AWI LJO, 2005 WL 3500771, at *6–7 (E.D. Cal. Dec. 16, 2005) ("While police do aspire to enforce the law, individual officers cannot be said to have a personal stake in ensuring conviction.").

Upon consideration, this Court follows these sister courts and holds that there is no privity between defendants and the state prosecutors for purposes of collateral estoppel.  The defendants were not parties to the state prosecution, did not participate in litigating the issue, were not witnesses at the state proceedings, and did not have the same stake in the outcome.  Under the circumstances, state prosecutors cannot be said to have adequately represented the defendant officers' interests in such a way that the officers should reasonably have expected to be bound by the results of the motion to suppress.  The state prosecutors represented the state's criminal enforcement interests, and cannot be said to be virtual representatives of the officers.

Therefore, the state ruling granting the motion to suppress does not have preclusive effect on this case.

1   \\

2   \\

3   **B.  Further Analysis of State Court Suppression Decisions**

4          That said, this Court looks to the state courts' reasoning in suppressing the evidence for

5   guidance.  Upon closer examination, such guidance is limited, however, because their decisions

6   relied on a rule uniquely applicable to suppression hearings that excluded from consideration

7   evidence about the dispatch, in which Plaintiff's sister requested the search of the premises.

8   Specifically, during the first state criminal proceeding, the state prosecutor argued that the state court

9   could not consider the information relayed in the dispatch from Plaintiff's sister, which arguably

10  provided consent to search the premises, based on the state court common law rule referred to as

11  *Harvey-Madden-Remers*.  The California Surpreme Court has recently described that rule as follows:

12
13              An officer may arrest or detain a suspect based on information
                received through official channels if a 911 call has sufficient indicia of
14              reliability a dispatcher may alert other officers by radio, who may then
                rely on the report, even though they cannot vouch for it.  However,
15              upon proper objection the People must prove that the source of the
                information is something other than the imagination of the officer who
16              does not become a witness.  This requirement can be met by calling
                the police dispatcher as a witness at the suppression hearing or by
17              introducing a recording of the 911 call.

18  People v. Brown, 61 Cal. 4th 968, 983 (2015), reh'g denied (Sept. 30, 2015) (internal citations and

19  quotations omitted).  Because the prosecution failed to call the dispatcher or another witness to

20  verify the information provided in the dispatch call to the police and it had not been directly received

21  by the officers who conducted the search, the state court disregarded the dispatch in determining the

22  legality of the search.  The court explained its decision as follows:

23              So I am sustaining the Harvey objection, and the evidence relating to
                what was—what the dispatcher relayed to the officer is stricken.
24
                This information from the dispatch was certainly germane and would
25              be germane to whether there was reasonable cause to believe that Mr.
                Hornsby possibly had a weapon.  Without it, the information available
26              to the officer, in other words, the evidence presented to the court, is
                that the officer had a cooperative person who was apparently about to
27              put his hands in his pocket.  The officer told him not to, and Mr.
                Hornsby complied.
28

> The following pat down did not occur during a valid detention based upon the evidence presented.  There is no evidence to believe that there was a possibility that Mr. Hornsby might have a weapon and might use it against the officer.
>
> . . .
>
> So based on those reasonings, I will on the 14th grant the motion [to suppress].

(ECF No. 27-13, at pp. 3-4).

In the second state court case, the motion to suppress omitted any information about the identity of the caller in the dispatch, and thus did not consider whether consent to search had been provided.  (ECF No. 27-27, at p. 5).  As a result, that state court also made the decision to suppress the evidence without the benefit of the very relevant information that someone who purported to have lawful possession of the property gave consent for the police to search the premises, and relayed arguably reliable additional information about potential criminal activity.

Based on the reasons for the state court decision, issue preclusion is inappropriate for the additional reason that the issue is not in fact the same as before this Court, *i.e.*, whether considering all evidence, including the dispatch, the search violated Plaintiff's constitutional rights.  That said, the Court notes for guidance purposes that, setting aside the issue of consent to search the premises, two judges found that the searches that followed were unlawful.

## IV.   CONSTITUTIONALITY OF THE SEARCH, SEIZURE, AND ARREST OF PLAINTIFF

The Court now turns to its independent assessment of whether Defendants are entitled to summary judgment on the ground that the undisputed facts preclude a finding that the search, seizure, and arrest violated the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. Const. Amend. IV. "A Fourth Amendment 'search' occurs when the government infringes on a subjective expectation of privacy that society is prepared to recognize as reasonable." United States v. Pope, 686 F.3d 1078, 1081 (9th Cir. 2012), quoting Katz v. United States, 389 U.S. 347, 360–61 (1967) (Harlan, J.,

concurring).  It is undisputed in this case that the officers did not have a warrant.  "Because warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement."  United States v. Cervantes, 703 F.3d 1135, 1141 (9th Cir. 2012).

## A.  Search of the Premises

The first search to which the Fourth Amendment attached was the search of the premises surrounding the home at 21205 Avenue 144.  This area around the home falls into the category of "curtilage," where there is a reasonable expectation of privacy.  See United States v. Perea-Rey, 680 F.3d 1179, 1184 (9th Cir. 2012), quoting Oliver v. United States, 466 U.S. 170, 180 (1984) ("Because the curtilage is part of the home, searches and seizures in the curtilage without a warrant are also presumptively unreasonable."); United States v. Perea-Rey, 680 F.3d 1179, 1185 (9th Cir. 2012) ("Warrantless trespasses by the government into the home or its curtilage are Fourth Amendment searches.").

The Court finds that this search of the premises around the home was lawful under the exception to the warrant requirement based on consent.  "A warrantless search conducted pursuant to a valid consent is 'constitutionally permissible.'"  Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).  The consent must be given by "a person in control of the premises."  United States v. Kaplan, 895 F.2d 618, 622 (9th Cir.1990).

Here, defendant officers had consent to search the premises.  Teddie Mitchell, Plaintiff's sister, who lawfully resided at the property, had called the Sheriff's Department and asked them to conduct the search.  (ECF No. 27-16, at p. 4.)  Ms. Mitchell was a person in control of the premises.  (ECF No. 31-1 at p. 12 (indicating that it is undisputed that "The Trustee authorized Plaintiff's sister Teddie Mitchell to reside on the property and authorized her with control over the property and all structures on the property")).

Thus, based on undisputed facts, defendants' search of the premises did not violate Plaintiff's Fourth Amendment rights.

\\

1  \\

2  \\

3  **B.  Pat Down Search of Plaintiff**

At some point during the search of the premises, Defendant McLean conducted a pat-down search of Plaintiff.  (ECF No. 31-1, at p. 19.)  In his motion for summary judgment, Defendant McLean argues that the pat-down search was permitted based on the exception for officer safety.

A warrantless search for weapons is permitted so long as the officer has a reasonable basis for believing the Plaintiff is armed and dangerous.  Thomas v. Dillard, No. 13-55889, 2016 WL 1319765, at *5 (9th Cir. Apr. 5, 2016) ("a frisk of a person for weapons requires reasonable suspicion that a suspect 'is armed and presently dangerous to the officer or to others'"); see Terry v. Ohio, 392 U.S. 1, 27 (1968) ("there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime").

Regarding the pat down search, Officer McLean has submitted a declaration explaining that he had a reasonable suspicion that Plaintiff was armed and dangerous:

> As we approached each other, the subject, later confirmed to be Mr. Hornsby, appeared to be reaching into his front pocket.  I could observe that Mr. Hornsby had bulges in the front pockets, the contents of which, [sic] I could not identify.
>
> Out of concern for my safety, believing that Plaintiff may have a gun in reliance on the information that had been provided concerning Mr. Hornsby's access to guns, and drawing on my experience that it is not uncommon for gun owners to have multiple guns, combined with the possiblity that the subject was under the influence, I ordered Mr. Hornsby to stop so that I could perform a pat down search for weapons.  Mr. Hornsby stopped and cooperated with the pat down.

(ECF No. 27-9, at p. 5.)  It is undisputed that Ms. Mitchell, Plaintiff's sister who had made the call requesting the search, had indeed reported to the dispatcher that "he's [Plaintiff] got a 410 and he's got my dad's shotgun now . . . ."  (ECF No. 27-16, at p. 7.)

Given the undisputed information from Ms. Mitchell indicating that Plaintiff may be armed, and in light of defendant McLean's declaration, the Court finds that the pat down search by defendant McLean fell within the exception for warrantless searches for a frisk for weapons based on officer safety.

## C.  Search of Plaintiff's Pocket

After the pat down search, defendant McClean proceeded to search Plaintiff's pockets, which led to the discovery of a bag of what appeared to be a controlled substance, i.e., kief.  This warrantless search was subject to the Fourth Amendment because Plaintiff had a reasonable expectation of privacy in the contents of his pockets.  See United States v. Pope, 686 F.3d 1078, 1081 (9th Cir. 2012) ("The government concedes that Pope had a reasonable expectation of privacy in the contents of his pockets.").  It is thus the government's burden to prove defendant McClean was acting under a valid exception to the Fourth Amendment's warrant requirement.

Defendant McLean jusifies the search of Plaintiff's pocket in his declaration as follows:

> During the pat down, I felt multiple items in Mr. Hornsby's front pockets that I couldn't identify.  Out of concern that one of the items may be a weapon, or an item that might be used as a weapon, and concern for my safety, I advised Mr. Hornsby that I was going to feel the inside of his pockets for weapons.  Mr. Hornsby was cooperative. As I reached into Mr. Hornsby's pockets, I felt a small baggie that was tied in a knot with a tail.

(ECF No. 27-9, at p. 5-6.)

This search of Plaintiff's pockets following the pat-down search raises Fourth Amendment concerns.  The dispatch call discussed the presence of a shotgun and a "401," which is a type of rifle. Neither of those weapons could have been in Plaintiff's pockets without Deputy McLean feeling them quite clearly during his pat-down search.

In considering this search of Plaintiff's pockets, this Court looks to the Ninth Circuit's direction regarding when a search for weapons is appropriate:

> A frisk for weapons is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly.  As the Supreme Court recognized in fashioning the stop-and-frisk exception to probable cause, people have a strong interest in personal security, and

routine police intrusions breed resentment within communities they serve. Accordingly, *Terry* was careful to craft a standard for a frisk that was both protective of law enforcement officers who confront potentially dangerous individuals and consistent with the objective, fact-based approach traditionally required to justify invasions into areas protected by the Fourth Amendment.

To establish reasonable suspicion a suspect is armed and dangerous, thereby justifying a frisk, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. A mere inchoate and unparticularized suspicion or hunch that a person is armed and dangerous does not establish reasonable suspicion, and circumstances suggesting only that a suspect would be dangerous *if* armed are insufficient. There must be adequate reason to believe the suspect *is* armed.

Reasonable suspicion is an objective standard, asking whether a reasonably prudent person would have been warranted in believing the suspect was armed and thus presented a threat to the officer's safety while he was investigating his suspicious behavior. This inquiry requires consideration of all the facts and circumstances an officer confronts in the encounter; we consider the totality of the circumstances . . .

In assessing the totality of the circumstances, relevant considerations may include: observing a visible bulge in a person's clothing that could indicate the presence of a weapon; seeing a weapon in an area the suspect controls, such as a car, "sudden movements" suggesting a potential assault or "attempts to reach for an object that was not immediately visible," "evasive and deceptive responses" to an officer's questions about what an individual was up to; unnatural hand postures that suggest an effort to conceal a firearm, and whether the officer observes anything during an encounter with the suspect that would dispel the officer's suspicions regarding the suspect's potential involvement in a crime or likelihood of being armed.

Thomas v. Dillard, No. 13-55889, 2016 WL 1319765, at *6 (9th Cir. Apr. 5, 2016) (internal quotations and citations omitted).

With this in mind, the Court finds that defendant McLean is not entitled to summary judgment regarding the constitutionality of the search of Plaintiff's pocket. Deputy McLean had just conducted a pat down search and had not found anything that felt like a weapon. Although he states that he had concern that something unidentifiable might be a weapon, he does not state that he felt something that could be hard, metallic, and gun shaped—something that could, in other words, be the weapons described by Ms. Mitchell. A baggie of kief does not feel like a gun or weapon. The undisputed facts thus do not establish that Defendant McLean's belief that the baggie could have

13

1  been either the 401 rifle or the shotgun described by Ms. Mitchell was reasonable under the totality

2  of the circumstances.  Summary judgment as to this issue is thus denied.

3  **D.  Search of Car**

4  Defendant England also searched Plaintiff's truck without a warrant that evening.  "Under

5  the automobile exception, police may conduct a warrantless search of a vehicle if there is probable

6  cause to believe that the vehicle contains evidence of a crime."  United States v. Brooks, 610 F.3d

7  1186, 1193 (9th Cir. 2010).  "Probable cause exists when, under the totality of the circumstances,

8  there is a fair probability that contraband or evidence of a crime will be found in a particular place."

9  United States v. Rodgers, 656 F.3d 1023, 1028 (9th Cir. 2011) (internal quotations and citations

10  omitted).

11  Defendant England described the basis for the search of the vehicle as follows:

12  
13  > From my vantage point outside the vehicle I observed that the
14  > compartment area of the vehicle was in disarray, that there were
15  > multiple items in the back of the passanger compartment of the
16  > vehicle, that included papers and clothing.  I observed an open beer in
17  > the center console of the vehicle, and a baggie sitting on an open area
18  > or shelf, on the dashboard of the vehicle, beneath the radio.  The
19  > baggie was partially hanging out and I could see that it was tied in a
20  > knot, and contained a long tail in plain sight from my vantage point
21  > outside the truck.  I do not have an independent recollection of
22  > whether the baggie was clear or opaque; however, after reading my
23  > report, which was prepared by me close in time to the event in the
24  > regular course of scope of my position as a Deputy and after reviewing
25  > the lab report, I recall that the baggie was clear and that the baggie
26  > contained a white powdery substance.

20  (ECF No. 27-8, at p. 6.)

21  Plaintiff contests these facts and has submitted the declaration of Plaintiff, which states the

22  following:

23  > There was no methamphetamine, or any other controlled substance in
24  > any vehicle I owned or possessed on the premises at 21205 Avenue
25  > 144, Porterville, California at any time and any contraband that any
26  > defendant in the above-entitled matter claims to have found in my
27  > vehicle was placed there deliberately by such defendant after
28  > searching.

26  (ECF No. 33, at p. 23.)

27  

28  

14

1   This Court finds that summary judgment is not available based on the evidence before it.

2   There is a factual dispute about what, if anything, was found in the car.  Moreover, it is not clear

3   from even Officer England's recitation of events whether he saw sufficient evidence of a crime from

4   outside the vehicle to justify a search.  Summary judgment on the constitutionality of the search of

5   the car is thus denied.

6   \\

7   ### E.  <u>Detention and Arrest of Plaintiff</u>

8   Following the search of Plaintiff's pocket, Defendant McLean handcuffed Plaintiff and

9   placed him in the patrol vehicle.  (ECF No. 31-1, at p. 21.)  After all searches were completed,

10  Plaintiff was put under arrest.  (ECF No. 27-9, at p. 7.)  Defendants McLean, England, and Campos

11  were present for the arrest.

12  "If an officer has probable cause to believe that an individual has committed even a very

13  minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the

14  offender."  <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001).  "Officers have probable cause

15  for an arrest if at the time of the arrest, the facts and circumstances within their knowledge and of

16  which they have reasonably trustworthy information are sufficient to warrant a prudent man in

17  believing that the defendant committed an offense."  <u>United States v. Rodgers</u>, 656 F.3d 1023, 1028-

18  29 (9th Cir. 2011) (internal quotations and citations omitted).  "A finding of probable cause must be

19  supported by the objective facts known to the officer at the time of the search.  <u>Id.</u> at 1029.

20  Defendant McClean explained in his declaration that "Mr. Hornsby was then placed under

21  arrest for suspicion of various drug related crimes, including possession of kief, possession of

22  methamphetamine, and for being under the influence . . . ."  (ECF No. 27-9, at p. 7.)  Defendant

23  England's declaration does not describe the arrest in particular, but states the following regarding

24  Plaintiff's manner:

25   I observed that Mr. Hornsby had difficult remaining still, was fidgety,
26  had exhibited signs of involuntary movements of his hands and
    fingers, his eyes were twitching, and he appeared to be exhibiting
27  some eyelid tremors.  His pulse was mildly elevated at 104 beats per
    minute when 60 to 90 beats per minute is normal; however given the
28

circumstances, I believed it was not outside of what could be considered normal.   While Mr. Hornsby was able to accurately estimate the lapse of time, based on my training and experience, it is not uncommon for a long term drug user to be able to accurately estimate short periods of time.

ECF No. 27-8, at p. 9.

Defendant Campos's declaration also does not address the arrest specifically, but states the following regarding Plaintiff's manner:

[Plaintiff] was extremely fidgety, his speech was abnormally fast, his eyes were twitching, and he continued to smack his lips as if he was thirsty.   Out of concern for his safety, I asked Mr. Hornsby if he remembered me, advised him that I remembered him, and asked him in a rhetorical manner, "When are you going to give this up" meaning when are you going to give up this lifestyle?  . . . . He stated that he remembered me, hung his head and stated, "Yeah I know."

ECF No. 27-7, at p. 5.

In light of the Court's rulings regarding the search of Plaintiff's pocket and car, it does not appear that undisputed evidence establishes probable cause for arrest based solely on evidence and observations garned through unquestionably constitutional searches.   In other words, if not for the search of the pocket and car, the only evidence of a crime would be Plaintiff's own manner, which is only established by the Officer's own statements and does not clearly and undisputably lead to the conclusion that there was probable cause that a crime had been committed.

Summary judgment is thus denied regarding the arrest of Plaintiff.

### F.  Impounding of the vehicle

Following Plaintiff's arrest, defendants towed Plaintiff's car.   Defendants argue that summary judgment is warranted on the Fourth Amendment claim as it relates to seizing Plaintiff's car based on exigent circumstances and the community caretaker exception.   (ECF No. 27-1, at p. 25.)

The "exigent circumstances exception" applies when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment."   Mincey v. Arizona, 437 U.S. 385, 394 (1978).   Exigent circumstances exist if law enforcement officers have probable cause to believe a crime has been

committed or is being committed and a reasonable belief that entry is "necessary to prevent physical

harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect,

or some other consequence improperly frustrating legitimate law enforcement efforts." United

States v. Alaimalo, 313 F.3d 1188, 1192–93 (9th Cir. 2002). "The government bears a heavy burden

of demonstrating that exceptional circumstances justified a departure from the normal procedure of

obtaining a warrant." U.S. v. Alvarez, 810 F.2d 879, 881 (9th Cir. 1987). "Exigent circumstances

are those in which a substantial risk of harm to the persons involved or to the law enforcement

process would arise if the police were to delay a search until a warrant could be obtained." United

States v. Delgadillo-Velasquez, 856 F.2d 1292, 1298 (9th Cir. 1988) (citations omitted).

"Under the community caretaking exception, police officers may impound vehicles that

jeopardize public safety and the efficient movement of vehicular traffic. Once a vehicle has been

legally impounded, the police may conduct an inventory search, as long as it conforms to the

standard procedures of the local police department. However, an inventory search must not be a ruse

for a general rummaging in order to discover incriminating evidence." United States v. Cervantes,

703 F.3d 1135, 1141 (9th Cir. 2012) (internal quotations and citations omitted). "[T]he

reasonableness of the impoundment depended on whether the impoundment fits within the authority

of police to seize and remove from the streets vehicles impeding traffic or threatening public safety

and convenience." United States v. Cervantes, 703 F.3d 1135, 1141 (9th Cir. 2012) (internal

quotations omitted).

Defendant Campos discusses the justification for the vehicle tow as follows:

> I directed the officers to have the vehicle towed for multiple reasons,
> including but not limited to, Mr. Hornsby was being arrested,
> suspected methamphetamine and a pipe (a felonious crime) had been
> located inside the passenger area of the vehicle, Mr. Hornsby had been
> driving the vehicle, and exited the vehicle immediately prior to his
> arrest, the cabin of the vehicle contained multiple items, and I believed
> that it was probable that the vehicle contained other evidence of the
> crime that had not yet been discovered or the nature of the evidence
> not yet appreciated. It was unclear if other persons would respond to
> or arrive at the property or near the property, who had access to the
> property, who might move or alter the vehicle. It appeared that Mr.
> Hornsby was not on the premises with permission of the resident, and
> Mr. Hornsby was unclear where he was living while he was at the

scene.  I had concern that the resident and/or thirs person might move or alter the vehicle.  It did not appear that Mr. Hornsby had a valid license.  Given the totality of the circumstances, I believes that I had authority to tow the vehicle.

(ECF No. 27-7, at p. 6).

The Court holds that sumary judgment is not appropriate on this seizure.  The car was on private property.  No other people were present.  The search of the car resulting in finding potential contraband does not appear jusitified, as described above, but in any event the desire to search for additional evidence does not provide exigent circumstances.  There was no imminent danger posed by the car.  It was not on a public road or posing a hazard to safety.  Thus, the officers were not entitled to seize the car without a warrant.  See United States v. Cervantes, 703 F.3d 1135, 1141-42 (9th Cir. 2012) (holding that seizure of car was unconstitutional where "[n]either Sanchez nor Colley provided any testimony that Cervantes's vehicle was parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft. . . . [T]he government presented no evidence that the vehicle would be vulnerable to vandalism or theft if it were left in its residential location, or that it posed a safety hazard, and thus failed to meet its burden to show that the community caretaking exception applied").

The Court notes that California Vehicle Code § 22655.5 does not change this result.  Putting aside whether a California statute can permit an otherwise unconstitutional search, the towing of this vehicle does not fit the terms of the statute, which allows a peace officer to remove a motor vehicle:

> (a)      When any vehicle is found upon a highway or public or private property and a peace officer has probable cause to believe that the vehicle was used as the means of committing a public offense.
>
> (b)      When any vehicle is found upon a highway or public or private property and a peace officer has probable cause to believe that the vehicle is itself evidence which tends to show that a crime has been committed or that the vehicle contains evidence, which cannot readily be removed, which tends to show that a crime has been committed.

Cal. Veh. Code § 22655.5.  Here, there is no allegation that the car itself was used to commit a public offense.  Moreover, there is no probable cause to believe that the vehicle contained evidence of a crime that could not be readily removed (and as explained above, there appears to be a dispute

of fact as to the existence of that evidence).  In any case, the cited statute does not justify towing the car and summary judgment on this basis is thus inappropriate.

### G.  <u>Seizure of the shotgun</u>

Defendants also seized a shotgun from the premises.  Defendant England describes his justification as follows:

> I located a firearm (a shotgun) that was in plain view, that was either hanging over a railing or saw horse inside the barn, rendered the weapon safe, and brought the gun to my vehible in the event that there was someone hiding at or near the barn that we had missed and who might pose a risk to officer safety. . . .  I rendered the firearm safe, and seized the firearm because there was no way to secure the firearm in light of the open nature of the barn and the possibility that thirs persons at or near the barn would have easy access to the firearm.

(ECF No. 27-8.)  In their motion for summary judgment, Defendants argue that "seizure of the gun was similarly necessary because there was no way to return the gun to the barn and properly secure the gun as the barn due [sic] to the open and accessible nature of the barn.  There was no one on the premises to accept responsiblity for the gun."  (ECF No. 27-1, at p. 25.)

The Court denies summary judgment on this claim as well.  Defendants do not even suggest that they seized the gun because they had probable cause to believe it was connected to a crime at the time of the seizure.  No third parties were ever seen on the property.  The officers had already "rendered the firearm safe."  The Court is not aware of any law allowing police officers to seize any weapon on a property merely for fear that someone could come on the property and use it in an illegal manner.

### V.    QUALIFIED IMMUNITY

Defendants next contend that they are entitled to qualified immunity.  "Qualified immunity shields a police officer from suit under § 1983 unless (1) the officer violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct."  <u>Thomas v. Dillard</u>, No. 13-55889, 2016 WL 1319765, at *4 (9th Cir. Apr. 5, 2016); <u>Carillo v. Cnty. of Los Angeles</u>, 798 F.3d 1210, 1218 (9th Cir. 2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable

official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.").

The Court holds that defendants are not entitled to qualified immunity.  For the reasons stated above, summary judgment is not appropriate regarding whether the officers violated Plaintiff's Fourth Amendment rights.  Moreover, the Fourth Amendment rights explained above are well settled in case law and clearly established, stemming from both the Fourth Amendment and Ninth Circuit, if not Supreme Court, precedent.  If, as Plaintiff claims, the officers looked in Plaintiff's pockets without having reasonable suspicion that they held a weapon, the officers should have understood that that search violated Plaintiff's rights.

## VI.    MONELL CLAIM AGAINST THE SHERIFF AND THE COUNTY

Defendants also seek summary judgment on Plaintiff's claim that the County of Tulare and Sheriff Wittman had a policy of authorizing, encouraging, and permitting searches without a warrant and without a reasonable belief that probable cause exists.

Under the U.S. Supreme Court case of Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978):

> Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.   Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

Id. at 690-91.  Defendants have submitted excerpts from the Sheriff's Policy Manual, (ECF No. 27-22, at p. 4-7) to support their contention that the policy at the Sheriff's Department is consistent with the law.

In opposition, Plaintiff points to testimony by Defendant Campos indicating that he reviewed the reports of what happened and believed based on those reports and his personal observation that

defendants were properly executing official customs, policies, and practices of the Tulare County Sheriff's department.  (ECF No. 28, at p. 21.)

The Court holds that defendants are entitled to summary judgment on the <u>Monell</u> claim as against the Sheriff's Department and County of Tulare.  Defendants have submitted evidence of a constitutional policy and Plaintiff has not set forth contrary evidence.  Defendant's statement does not indicate that an unconstitutional policy or custom exists, but rather that he believed the searches done were constitutional and consistent with a legal policy.  Such a defense of the officers' conduct falls short of establishing a dispute over fact regarding a <u>Monell</u> claim.

\\

## VII.   CONCLUSION AND ORDER

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 27) is GRANTED IN PART and DENIED IN PART.  Specifically:

1. Summary adjudication is granted in favor of Defendant Bill Wittman in his capacity as Sheriff of Tulare County;

2. Summary adjudication is granted in favor of the County of Tulare;

3. Summary adjudication is granted in favor of Defendants as to the search of the premises surrounding the home at 21205 Avenue 144;

4. Summary adjudication is granted in favor of Defendants as to the pat down search of Plaintiff; and,

5. Summary adjudication is denied with respect to:

   a. The search of Plaintiff's pocket;

   b. The search of Plaintiff's car;

   c. The detention and arrest of Plaintiff;

   d. The impoundment of Plaintiff's car; and,

   e. The seizure of the shotgun in the barn.

Defendants' initial Motion for Summary Judgment (ECF No. 21) was superseded by the second motion for summary judgment and is thus DENIED AS MOOT.

IT IS SO ORDERED.

Dated:   __**May 16, 2016**__                    /s/ _Erica P. Grosjean_
                                         UNITED STATES MAGISTRATE JUDGE